William J. Honan
Christopher R. Nolan
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
BRYGGEN SHIPPING & TRADING AS

FEB 20 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRYGGEN SHIPPING & TRADING AS,

Plaintiff,

-against-

SH MARINE LTD. a/k/a SH MARINE CO., LTD.,

Defendant.

08 CV 1701

08 Civ. ____

**VERIFIED COMPLAINT**

Plaintiff, Bryggen Shipping & Trading AS ("Bryggen" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against SH Marine Ltd. a/k/a SH Marine Co., Ltd. ("SHM" or "Defendant") alleges, upon information and belief, as follows:

1. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.    At all times material herein, plaintiff Bryggen was and is a business entity organized and existing under the laws of the Norway and maintains a place of business at Gullskogaarden, Bryggen 47, Bergen, Norway.

3.    Upon information and belief, at all times material herein, defendant SHM is and was a business entity organized and existing under the laws of a foreign state with its principal place of business at Rm. 621, Chang-Gang B/D 22, Dohwa-Dong, Mapo-Ku, Seoul, 121-763, Korea.

4.    SHM filed a Rule B action in this Court against Bryggen, as defendant (07 Civ. 10481 (RJH)), by complaint filed November 20, 2007 ("Similar Rule B Action").

5.    On December 19, 2007 SHM filed a Notice of Voluntary Dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure whereby SHM voluntarily dismissed the Similar Rule B Action without prejudice.

6.    Plaintiff's claim here did not arise until January 21, 2008, after dismissal of the Similar Rule B Action, and therefore, could not have been raised in the prior proceeding.

7.    On or about January 3, 2006 Bryggen and SHM entered into a time charter party whereby Bryggen as Owner agreed to let and SHM as Charterer agreed to hire the KVARVEN and the SKARVEN ("Vessels"), under an amended SHELLTIME 4 charter party (the "Charter"), which was memorialized via a fixture recap. A true and correct copy of the fixture recap is attached hereto as Exhibit 1. The Charter provided for a period of two years plus or minus 60 days in Charterer's option.

8.    The Charter included the standard  SHELLTIME 4 charter party terms with logical amendments plus additional Rider Clauses 1 through 22. A true and correct copy of the

amended SHELLTIME 4 charter party executed by the parties is annexed as Exhibit 2 with Rider Clauscs 1 through 22 omittcd as they are not relevant to Bryggen's claim.

9. Under the terms of the Charter Bryggen is entitled to US $16,250 per day pro rata for each vessel and hire is payable monthly in advance. Exhibit 2, Clause 8.

10. The KVARVEN was delivered on June 3, 2006 and the SKARVEN on December 25, 2006. Bryggen invoiced SHM for hire for February, 2008 in the amount of US $473,250.00 on the KVARVEN and invoiced SHM for hire for January and February, 2008 in the amount of US $813,098.57 on the SKARVEN. True copies of these invoices are annexed hereto as Exhibit 3.

11. SHM has failed to pay all or any of the hire due under the Charter in beach of its absolute duty under the Charter to do so. Therefore, Bryggen has a claim against SHM for outstanding hire due in the amount of US $1,286,348.57.

12. The terms of the Charter call for arbitration in London and the application of English law. London arbitration has been commenced and the parties have agreed upon a sole arbitrator.

13. On February 19, 2008 Bryggen served its application for an immediate award for the outstanding hire amounts due from SHM, including interest on the principal sum and recoverable legal costs.

14. While all disputes arising out of the Charter are to be arbitrated in London, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well as 9 U.S.C. §8, is not and cannot be considered a waiver of the Charter's arbitration clause.

15. Under English law and in London arbitration, charter party awards regularly include costs, including a reasonable allowance for attorney's fees.

16. Upon information and belief it will take two years to arbitrate this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs:

| | |
|---|---|
| Interest: | $ 167,225.32 ($1,286,348.57 x 0.065/year x 2 years) |
| Attorneys' fees | $ 60,000.00 |
| Total Principal Claim: | $1,286,348.57 |
| Total Sought: | **$1,513,573.89** |

17. SMH is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name(s) of SH Marine Ltd. or SH Marine Co., Ltd. with, upon information and belief, the following financial institutions: Bank of America, N.A.; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; China Trust Bank; Industrial Bank of Korea; Shin Han Bank; Great Eastern Bank; Nara Bank; United Orient Bank; or any other financial institution within the Southern District of New York.

**WHEREFORE**, Bryggen Shipping & Trading AS prays:

1. That a summons with process of attachment and garnishment may issue against the defendant SH Marine Ltd. a/k/a SH Marine Co., Ltd.; and if defendants cannot be found, then that its goods, chattels and credits within the district, and particularly all bank accounts and other property of SH Marine Ltd. and/or SH Marine Co., Ltd. with the financial institutions noted above in paragraph 17, may be attached in an amount sufficient to answer plaintiff's claim;

2. That defendant SH Marine Ltd. a/k/a SH Marine Co., Ltd. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of Bryggen Shipping & Trading AS and against SH Marine Ltd. a/k/a SH Marine Co., Ltd. in the amount of US$1,513,573.89 (including estimated interest, expenses and attorneys' fees); and,

4. That this Court grant Bryggen Shipping & Trading AS such other and further relief which it may deem just and proper.

Dated: New York, New York
February 20, 2008

HOLLAND & KNIGHT LLP

By: ______________________

William J. Honan
Christopher R. Nolan
Lissa Schaupp
195 Broadway
New York, NY 10007-3189
Tel: (212) 513-3200
Fax: (212) 385-9010

*Attorneys for Plaintiff*
*Bryggen Shipping & Trading AS*

**VERIFICATION**

STATE OF NEW YORK )
:ss.:
COUNTY OF NEW YORK )

WILLIAM J. HONAN, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Bryggen Shipping & Trading AS ("Bryggen"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Bryggen and corresponded with Bryggen's representatives regarding this matter. I am authorized by Bryggen to make this verification, and the reason for my making it as opposed to an officer or director of Bryggen is that there are none within the jurisdiction of this Honorable Court.

William J. Honan

Sworn to before me this
20th day of February, 2008

Notary Public

DIALYZ E. MORALES
Notary Public, State Of New York
No. 01MO6059215
Qualified In New York County
Commission Expires June 25, 2011

# 5135173_v1

# EXHIBIT 1

**Maria Hempel**

**From:** brokers@island.com.sg

**Sent:** 3. januar 2006 11:47

**To:** brokers@island.com.sg

**Subject:** Clean recap 2 x MISC ships, Bryggen - SH Marine - TC

Ref: 030106-006005 - I.S. Shipbrokers Pte Ltd, Tel:65361662, Fax:65366455.

To: Network Chartering - Attn Hans Solberg
To: SH Marine - Attn Mr Heo

We are pleased to recap todays fixture for time charter with the following terms / conditions with all subjects lifted:

- Cp Date: 3rd January 2006

- Chrts: SH Marine Ltd, Seoul Korea

- Owners: Bryggen Shipping and Trading A/S as time-chartered owners.

- Two vessels out of Mt Kvarven, and/or sister vessels tbn.

- Vessels are described as follows:

Brief details as follows (full details have been sent previously):

Built: 1990 (Kvarven).
Class: Lloyds Register, + LMC, UMC, IGS, Chemical Tankers IMO 2/3.
Flag: Malaysian.
DWT: 29974 mts.
Loa: 172.20 metres.
Beam: 26.00 metres.
Summer draft: 11.031 metres.
International GRT/NRT: 18453/9759.
Cargo capacity: 34962 cbm (98 pct) including slops.
Segregations: upto 35 grades of cargo.
Centre tanks: 17576.3 cbm (100 percent) of which 5278.1 cbm stainless steel with balance phenolic epoxy. On two of the vessels centres tanks 9 and 10 (total 2380.5 cbm)) are zinc coated.
Wing tanks: 18100.2 cbm phenolic epoxy.

Speed and consumption to apply as per below:

Performing speed and bunker consumption:

Owners to warrant the following speed and consumption (base on Beaufort scale 4) for all the vessels throughout the entire hire
period:-

- Vessel average speed (laden / ballast): 13.0 kts / 13.5 kts
- Average FO daily cons (laden / ballast): 24 MT / 23 MT
- Average FO daily consumption (cargo heating): 10 to 15 MT
- Average DO daily consumption (laden / ballast): 3.5 MT / 3.5 MT
- Average DO daily consumption (whilst in port): 4.5 to 4.7 MT

- Major Oil Company Approvals Clause: Oil Majors Approval Clause Owners shall present the vessel at the time of delivery with two (2) oil major approval out of five (5) oil major requested namely BP Amoco, Shell, Exxonmobil, Total, Chevtex together with a valid CDI report. Owners within 90 days after delivery of vessel to

Charterers shall endeavour best to arrange for inspection on the balance 3 oil major approval, which is subject to oil major willingness to inspect the vessel, inspector availability and Charterer's trading pattern. If the vessel fails in one or more of the items of inspection, Owners undertake immediately to rectify the deficiency and to notify the inspecting party accordingly.

If charterers request owner to get other oil majors, owners shall request such oil major inspection in the earliest time and owner/vessels crew shall pay attention to pass such oil major inspection with charterers cost/time of inspection.

- Period: Time Charter 2 years +/- 60 days in Chopt.

- Delivery: DOP osp UK/C.

- Laycan February - August 2006

SH Marine will get the two first units delivered from MISC to Bryggen
Owners to narrow down laycan 15 days spread 45 days prior to the estimated delivery place / date and again to narrow down laycan 10 days spread 30 days prior to the estimated delivery place / date and again narrow 5 days spread 20 days prior to the estimated delivery place / date.

It shall however be understood that in the event the Headowners are delayed in their delivering programme to Bryggen (which is four vessels evenly spread February/August 2006) and laycan(s) with SH Marine are missed and one or both of these c/p are cancelled, then such cancellation shall be outright without any claim against Bryggen for non-delivery of the vessel(s).

- Redelivery: DOP osp UK/C, Caribs, USA waters, Med, India/Feast range.

- Trading Limits: The vessel is to carry out world wide trading always afloat, always within I.W.L. and always via safe ports, excluding all war risk and warlike zones as declared by Owners' Hull & Machinery insurers, all United Nations and/or United States of America embargoed countries, and Cuba for the last 180 days of the time charter period unless the U.S.A.'s ban on Cuba trade changes during the time charter period. Charterers to discuss their requirement to trade outside Institute Warranty Limits as well as to areas of war risk and warlike zones against paying extra insurance, which is always subject to Head-Owners' final consent. North Korea and Israel are to be excluded.

- Permitted cargoes: All lawful merchandise permitted by vessel's class, certificate of fitness, coating resistance list and permitted by Marpol/IMO or other regulatory body and compatible with pumps, lines, packings and other equipment. Persistent oil is allowed to be carried as far as IMO regulations, Certificate of Fitness and Class permit. Crude Oil and Fuel Oil always to be excluded from carriage. Chartereres shall have the option to carry porkfree tallow.

- Hire US$ 16250 per day pro rata for each vessel

Charterers are to pay US$ 2000 per month (per vessel for victualling, communications, gratitude, bunker analysis and crew overtime.

- Hire payable monthly in advance

- Shelltime 4 cp and terms as per time-charterparty between MISC Bhd and Bryggen Shipping and Trading dated 17th October 2005, except delete cls 18

- Commission: 1.25% commission to I S Shipbrokers is to be paid by Owners on all hire earned.

end recap

Thank you very much for your support and please advise your agreement to the above.

Best regards
Esben Ringen
I S Shipbrokers

# EXHIBIT 2

Code word for this Charter Party
"SHELLTIME 4"

Issued December 1984

# 2ND ORIGINAL
# Time Charter Party

LONDON      19
Singapore 03 January 2005

IT IS THIS DAY AGREED between *Bryggen Shipping and Trading AS as time chartered owners*    1

*at Bergen, Norway*                        (hereinafter referred to as "Owners"), being time chartered owners of    2
the

*MT "Bryan Aasgaard" or MT "Bryan Coulnavath" or MT
"Bryan Master" or MT "Coulor Trollen". One of the above named vessels will be nominated and
required in due course a follow at future date. The name accordingly.*    3

hereinafter referred to as the vessel") that firm at aa Charterers based on SK Marine Ltd

of South Korea    (hereinafter referred to as "Charterers")

*[extensive redacted / illegible blocks]*

...the vessel have a full and complete number of officers, seamen and crew for a vessel of the...
...the vessel is any event to be less than required by the laws of the flag state and who suits for
...requirements of the law of the flag state...

(iii)  ...personnel well officer and certificate of competency in accordance with the...
requirements of the law of the flag state

(iii)  all national personnel shall be fluent in accordance with the relevant provisions of the
international Convention on the Standards of Certification and Watchkeeping for Seafarers... they shall be so at the master responsible with a good working knowledge of the English
language so as to enable the operation of the vessel and shall follow the vessel or carrying and safety of...
in which management to receive the vessel and thereafter the vessel or carrying charges deterioration is
carried and prior to any docking.

(iv)  Owners guarantee that throughout the charter service the master shall with the vessel's officers
and crew, unless otherwise agreed by Charterers,
(i)   prosecute all voyages with the utmost despatch;
(ii)  render all necessary assistance; and    30

(iii) load and discharge cargo as rapidly as possible when required by Charterers or their agents to do so, by night or by day, but always in accordance with the laws of the place of loading or discharging (as the case may be) and in each case in accordance with any applicable laws of the flag state.

Duty to Maintain

3. (i) Throughout the charter service Owners shall, whenever the passage of time, wear and tear or any event (whether or not coming within Clause 27 hereof) requires steps to be taken to maintain or restore the conditions stipulated in Clauses 1 and 2(a), exercise due diligence so to maintain or restore the vessel.

(ii) If at any time whilst the vessel is on hire under this charter the vessel fails to comply with the requirements of Clauses 1,2(a) or 10 then hire shall be reduced to the extent necessary to indemnify Charterers for such failure. If and to the extent that such failure affects the time taken by the vessel to perform any services under this charter, hire shall be reduced by an amount equal to the value, calculated at the rate of hire, of the time so lost.

Any reduction of hire under this sub-Clause (ii) shall be without prejudice to any other remedy available to Charterers, but where such reduction of hire is in respect of time lost, such time shall be excluded from any calculation under Clause 24.

(iii) If Owners are in breach of their obligation under Clause 3(i) Charterers may so notify Owners in writing; and if, after the expiry of 30 days following the receipt by Owners of any such notice, Owners have failed to demonstrate to Charterers' reasonable satisfaction the exercise of due diligence as required in Clause 3(i), the vessel shall be off-hire, and no further hire payments shall be due, until Owners have so demonstrated that they are exercising such due diligence.

Furthermore, at any time while the vessel is off-hire under this Clause 3 Charterers have the option to terminate this charter by giving notice in writing with effect from the date on which such notice of termination is received by Owners or from any later date stated in such notice. This sub-Clause (iii) is without prejudice to any rights of Charterers or obligations of Owners under this charter or otherwise (including without limitation Charterers' rights under Clause 21 hereof).

Period Trading Limits

4. Owners agree to let and Charterers agree to hire the vessel for a period of *2 years plus or minus 60 days in Charterers' option* commencing from the time and date of delivery of the vessel, for the purpose of carrying all lawful merchandise (subject always to Clause 28) including in particular *see Clause 49*

[illegible]

The vessel shall be delivered by Owners at a port in *Dropping last outbound sea pilot* [illegible]

[illegible]

*Charterers to redeliver vessel with last three cargoes clean unleaded and under lier 2.5 ppg with cargo tanks to be gas free. On redelivery all vessel's tanks/pumps/lines shall be cleaned to Owners inspector's satisfaction in line with Industry standards, free of soot, slops and dirty ballast. Owners are to provide the last 3 cargoes in each tank prior to delivery in each tank. Notices to be given as requested, and vessel to be delivered ready in all respects, fitted for navigation. All certificates and documents are to be in order prior delivery and to be maintained so throughout the time charter period. Vessel's ownership, flag or class not to change during the time charter period without the charterers' consent.*

Laydays/ Cancelling

5. ~~The vessel shall not be delivered to Charterers before~~ ~~and Charterers shall have the option of cancelling this charter if the vessel is not ready and at their disposal on or before~~

*Charterers will get the two first units delivered from MISC to Bryggen. Owners to narrow down*

*laycan 15 days spread 45 days prior to the estimated delivery place / date and again to narrow down laycan 10 days spread 30 days prior to the estimated delivery place / date and again narrow 5 days spread 20 days prior to the estimated delivery place / date.*

*It shall however be understood that in the event the Headowners are delayed in their delivering programme to Bryggen (which is four vessels evenly spread February/August 2006) and laycan(s) with SH Marine are missed and one or both of these Charter Party are cancelled, then such cancellation shall be outright without any claim against Bryggen for non-delivery of the vessel(s)*

*Laycan : February 2006 - August 2006*

Owners to Provide

6. Owners undertake to provide and to pay for all provisions, wages, and shipping and discharging fees and all other expenses of the master, officers and crew; also, except as provided in Clauses 4 and 34 hereof, for all insurance on the vessel, for all deck, cabin and engine-room stores, and for water; for all drydocking, overhaul, maintenance and repairs to the vessel; and for all fumigation expenses and de-rat certificates. Owners' obligations under this Clause 6 extend to all liabilities for customs or import duties arising at any time during the performance of this charter in relation to the personal effects of the master, officers and crew, and in relation to the stores, provisions and other matters aforesaid which Owners are to provide and pay for and Owners shall refund to Charterers any sums Charterers or their agents may have paid or been compelled to pay in respect of any such liability. Any amounts allowable in general average for wages and provisions and stores shall be credited to Charterers insofar as such amounts are in respect of a period when the vessel is on-hire.

Charterers to Provide

7. Charterers shall provide and pay for all fuel (except fuel used for domestic services), towage and pilotage and shall pay agency fees, port charges, commissions, expenses of loading and unloading cargoes, canal dues and all charges other than those payable by Owners in accordance with Clause 6 hereof, provided that all charges for the said items shall be for Owners' account [illegible] Owners' purposes or while the vessel is off-hire [illegible] distance made good and taken into account [illegible] and provided further that any fuel used in connection with a general average sacrifice or expenditure shall be paid for by Owners.

Rate of Hire

8. Subject as herein provided, Charterers shall pay for the use and hire of the vessel at the rate of *United States Dollars [illegible] per day, and pro rata for any part thereof [illegible] United States Dollars $2000 per month (for victualling, communication, [illegible] analysis and crew overtime) [illegible] mooring [illegible]* [illegible]

*Tank Cleaning Cost : Charterers to pay [illegible] as follows :*

*a) Tank cleaning (from [illegible]) : United States Dollars [illegible] per tank*
*b) Tank cleaning [illegible] United States Dollars [illegible] per tank*
*c) Tank cleaning [illegible] United States Dollars [illegible] per tank*
*d) [illegible] United States Dollars [illegible] per tank*

Payment of Hire

9. Subject to Clause 3(III) hereof, hire shall be paid [illegible] *payable to Owner's nominated bank account [illegible] transfer 30 days in advance [illegible] payment to be paid [illegible]*

*Owners banking details :*
*DnB NOR BANK ASA*
*USD account [illegible]*
*IBAN NO[illegible]*
*Swift DNBANOKK*
*Credit Bryggen Shipping & Trading A/S*
*Gullskoguarden, Bryggen 47,*
*N-5003 Bergen, Norway*
*V.A.T. No. [illegible]*
*Correspondent bank*
*Bank of New York, 48 Wall Street, New York NY 10286*
*Swift IRVTUS3N*
*ABA 021-000-018*

Account

in per calendar month in advance, less:

(i) any hire paid which Charterers reasonably estimate to relate to off-hire periods, and

(ii) any amounts disbursed on Owners' behalf, any advances and commission thereon, and charges which are for Owners' account pursuant to any provision hereof, and

(iii) any amounts due or reasonably estimated to become due to Charterers under Clause 3(ii) or 24 hereof,

any such adjustments to be made at the due date for the next monthly payment after the facts have been ascertained. Charterers shall not be responsible for any delay or error by Owners' bank in crediting Owners' account provided that Charterers have made proper and timely payment.

In default of such proper and timely payment,

(a) Owners shall notify Charterers of such default and Charterers shall within seven days of receipt of such notice pay to Owners the amount due including interest, failing which Owners may withdraw the vessel from the service of Charterers without prejudice to any other rights Owners may have under this charter or otherwise; and

(b) Interest on any amount due but not paid on the due date shall accrue from the day after that date up to and including the day when payment is made, at a rate per annum which shall be 1% above the U.S. Prime Interest Rate as published by the Chase Manhattan Bank in New York at 12.00 New York time on the due date, or, if no such interest rate is published on that day, the interest rate published on the next preceding day on which such a rate was so published, computed on the basis of a 360 day year of twelve 30-day months, compounded semi-annually. *Charterers shall not be responsible for any delay or error by Owners' bank in crediting Owners' account provided that Charterers have made proper and timely payment. In default of punctual and regular payment as herein specified, Owners shall notify Charterers in writing whereupon Charterers shall make payment of the amount due without interest within 3 (three) banking days of receipt of such notification from Owners, failing which Owners shall have the right to withdraw the vessel from the service of the Charterers without prejudice to any claim Owners may otherwise have on Charterers under this Charter Party.*

10. The whole reach, burthen and decks of the vessel and any passenger accommodation (including Owners' Suite) shall be at Charterers' disposal, reserving only proper and sufficient space for the vessel's master, officers, crew, tackle, apparel, furniture, provisions and stores, provided that the weight of stores on board shall not, unless specially agreed, exceed [illegible] tonnes at any time during the charter period.

~~11. Overtime pay of the master, officers and crew in accordance with ship's articles shall be for Charterers' account when incurred, as a result of complying with the request of Charterers or their agents, for loading, discharging, heating of cargo, bunkering or tank cleaning.~~ *Please see line 115*

12. Charterers shall from time to time give the master all requisite instructions and sailing directions, and he shall keep a full and correct log of the voyage or voyages, which Charterers or their agents may inspect as required. The master shall when required furnish Charterers or their agents with a true copy of such log and with properly completed loading and discharging port sheets and voyage reports for each voyage and other returns as Charterers may require. Charterers shall be entitled to take copies at Owners' expense of any such documents which are not provided by the master.

13. (i) The master (although appointed by Owners) shall be under the orders and direction of Charterers as regards employment of the vessel, agency and other arrangements, and shall sign bills of lading as Charterers or their agents may direct (subject always to Clauses 35(a) and 40) without prejudice to this charter. Charterers hereby indemnify Owners against all consequences or liabilities arising from the master, [illegible] signing bills of lading in accordance with the directions of Charterers, or their agents, to the extent that the terms of such bills of lading fail to conform to the requirements of this charter, or (except as provided in Clause 13(ii)) from the master otherwise complying with Charterers' or their agents' orders.

(ii) [illegible]

(iii) Notwithstanding the foregoing, Owners shall not be obliged to comply with any orders from Charterers to discharge all or part of the cargo

(i) at any place other than that shown on the bill of lading and/or

(ii) without presentation of an original bill of lading

unless they have received from Charterers both written confirmation of such orders and an indemnity in a form acceptable to Owners. *See Rider Clause 6 and Appendix I*

14. If Charterers complain of the conduct of the master or any of the officers or crew, Owners shall immediately investigate the complaint. If the complaint proves to be well founded, Owners shall, without delay, make a change in the appointments and Owners shall in any event communicate the result of their investigations to Charterers as soon as possible.

~~15. [illegible]~~ *See Rider Clause 3*

16. Stevedores when required shall be employed and paid by Charterers, but this shall not relieve Owners from responsibility at all times for proper stowage, which must be controlled by the master who shall keep a strict account of all cargo loaded and discharged. Owners hereby indemnify Charterers, their servants and agents against all losses, claims, responsibilities and liabilities arising in any way whatsoever from the employment of pilots, tugboats or stevedores, who although employed by Charterers shall be deemed to be the servants of and in

the service of Owners and under their instructions (even if such pilots, tugboat personnel or stevedores are in fact the servants of Charterers their agents or any affiliated company); provided, however, that

(i) the foregoing indemnity shall not exceed the amount to which Owners would have been entitled to limit their liability if they had themselves employed such pilots, tugboats or stevedores, and

(ii) Charterers shall be liable for any damage to the vessel caused by or arising out of the use of stevedores, fair wear and tear excepted, to the extent that Owners are unable by the exercise of due diligence to obtain redress therefor from stevedores.

Supernumeraries

17. Charterers may send representatives in the vessel's available accommodation upon any voyage made under this charter, Owners finding provisions and all requisites as supplied to officers, except liquors. Charterers paying at the rate of *United States Dollars 25* per day for each representative while on board the vessel ***and maximum 2 persons. Charterers will provide Owners/Master with satisfactory insurance for said representative(s). Such representative to sign Owners Protection and Indemnity Club Letter of Indemnity prior boarding.***

Sub-letting

~~18. Charterers may sub-let the vessel, but shall always remain responsible to Owners for due fulfilment of this charter.~~

Final Voyage

19. If when a payment of hire is due hereunder Charterers reasonably expect to redeliver the vessel before the next payment of hire would fall due, the hire to be paid shall be assessed on Charterers' reasonable estimate of the time necessary to complete Charterers' programme up to redelivery, and from which estimate Charterers may deduct amounts due or reasonably expected to become due for

(i) disbursements on Owners' behalf or charges for Owners' account pursuant to any provision hereof, and

(ii) bunkers on board at redelivery pursuant to Clause 15.

Promptly after redelivery any overpayment shall be refunded by Owners or any underpayment made good by Charterers.

[illegible]

[illegible]

[illegible]

without prejudice to Charterers' rights under Clause 4 or to any other rights of Charterers hereunder or otherwise the vessel shall be off-hire from the commencement of such loss of time until she is again ready and in an efficient state to resume her service from a position not less favourable to Charterers than that at which such loss of time commenced; provided, however, that any service given or distance made good by the vessel whilst off-hire shall be taken into account in assessing the amount to be deducted from hire.

(b) If the vessel fails to proceed at any guaranteed speed pursuant to Clause 24, and such failure arises wholly or partly from any of the causes set out in Clause 21(a) above, then the period for which the vessel shall be off-hire under this Clause 21 shall be the difference between

(i) the time the vessel would have required to perform the relevant service at such guaranteed speed, and

(ii) the time actually taken to perform such service (including any loss of time arising from interruption in the performance of such service).

For the avoidance of doubt, all time included under (ii) above shall be excluded from any computation under Clause 24.

(c) Further and without prejudice to the foregoing, in the event of the vessel deviating (which expression includes without limitation putting back, or putting into any port other than that to which she is bound

under the instructions of Charterers) for any cause or purpose mentioned in Clause 21(a), the vessel shall be off-hire from the commencement of such deviation until the time when she is again ready and in an efficient state to resume her service from a position not less favourable to Charterers than that at which the deviation commenced, provided, however, that any service given or distance made good by the vessel whilst so off-hire shall be taken into account in assessing the amount to be deducted from hire. If the vessel, for any cause or purpose mentioned in Clause 21 (a), puts into any port other than the port to which she is bound on the instructions of Charterers, the port charges, pilotage and other expenses at such port shall be borne by Owners. Should the vessel be driven into any port or anchorage by stress of weather hire shall continue to be due and payable during any time lost thereby.

(d) If the vessel's flag state becomes engaged in hostilities, and Charterers in consequence of such hostilities find it commercially impracticable to employ the vessel and have given Owners written notice thereof then from the date of receipt by Owners of such notice until the termination of such commercial impracticability the vessel shall be off-hire and Owners shall have the right to employ the vessel on their own account.

(e) Time during which the vessel is off-hire under this charter shall ***at Charterers option*** count as part of the charter period. ***Cleaning of tanks to be performed with due despatch by vessel's crew in accordance with normal practise of the trade in which the vessel is engaged. Charterers are to allow reasonable cleaning time allowance for each tank due to the technical ability of the vessel. Any other cost and expenses in connection with tank - cleaning such as cleaning chemicals, and rags are for Charterers account. Fresh water required for cargo tank cleaning shall be for Charterers account, however vessel shall use evaporator water as much as possible. Fresh water for domestic consumption shall be for Owners' account. Upon request, Charterers shall provide tank cleaning advice, information and/or recommendation, including procedures and assist in any other way possible, but Owners always to remain responsible.***

***Vessel will clean cargo tanks to the satisfaction of the Charterers, Shippers' surveyor which should be in line with industry standards. Should the vessel for any reason attributable to the vessel fail to reach Charterers', Shippers' surveyors satisfaction the vessel is to be reclaimed at Owners' time and expense. If the tanks cannot pass reinspection within twenty four (24) hours from the initial failure and provided that the actual voyage charterer accepts such procedure, Owners will appoint a recognised independent surveyor for the reinspection whose finding shall be conclusive and costs to be equally shared between Charterers and Owners. Where wall wash (test) are required same to be conducted by Master or Charterers representative and all testing [illegible] and equipments to be provided by Charterers to assist crew [illegible].***

22. (a) [illegible]

[illegible]

***See Rider Clause 10.***

Ship Inspection

23. Charterers shall have the right at any time during the charter period to make such inspection of the vessel as they may consider necessary. This right may be exercised as often and at such intervals as Charterers in their absolute discretion may determine and whether the vessel is in port or on passage. Owners affording all necessary co-operation and accommodation on board provided, however,

(i) that neither the exercise nor the non-exercise, nor anything done or not done in the exercise or non-exercise, by Charterers of such right shall in any way reduce the master's or Owners' authority over, or responsibility to Charterers or third parties for, the vessel and every aspect of her operation, nor increase Charterers' responsibilities to Owners or third parties for the same; and

(ii) that Charterers shall not be liable for any act, neglect or default by themselves, their servants or agents in the exercise or non-exercise of the aforesaid right.

Detailed Description and Performance

24. (a) ~~Owners guarantee that the speed and consumption of the vessel shall be as follows:~~

| Average speed in knots | ~~Maximum average bunker consumption main propulsion fuel oil/diesel oil tonnes~~ | ~~auxiliaries fuel oil/diesel oil tonnes~~ |
|---|---|---|
| Laden | | |
| Ballast | | |

[illegible]

*Owners to warrant the following speed and consumption (base on Beaufort scale 4) for all the vessels throughout the entire hire period :-*

*- Vessel average speed (laden/ballast): 13.0 kts / 13.5 kts*
*- Average FO daily consumption (laden/ballast): 24MT / 23MT*
*- Average FO daily consumption (cargo heating): 10 to 15MT*
*- Average DO daily consumption (laden/ballast): 3.5MT / 3.5 MT*

*- Average DO daily consumption (whilst in port):4.5 to 4.7MT*
*- Average boiler daily FO consumption during tank cleaning operation:55-65MT and MDO 6MT*

Salvage

25. Subject to the provisions of Clause 21 hereof, all loss of time and all expenses ( excluding any damage to or loss of the vessel or tortious liabilities to third parties) incurred in saving or attempting to save life or in successful or unsuccessful attempts at salvage shall be borne equally by Owners and Charterers provided that Charterers shall not be liable to contribute towards any salvage payable by Owners arising in any way out of services rendered under this Clause 25.

All salvage and all proceeds from derelicts shall be divided equally between Owners and Charterers after deducting the master's, officers' and crew's share.

Lien

26. Owners shall have a lien upon all cargoes and all freights, sub-freights and demurrage for any amounts due under this charter; and Charterers shall have a lien on the vessel for all monies paid in advance and not earned, and for all claims for damages arising from any breach by Owners of this charter.

Exceptions

27. (a) The vessel, her master and Owners shall not, unless otherwise in this charter expressly provided, be liable for any loss or damage or delay or failure arising or resulting from any act, neglect or default of the master, pilots, mariners or other servants of Owners in the navigation or management of the vessel; fire, unless caused by the actual fault or privity of Owners; collision or stranding; dangers and accidents of the sea; explosion, bursting of boilers, breakage of shafts or any latent defect in hull, equipment or machinery; provided, however, that Clauses 1, 2, 3 and 24 hereof shall be unaffected by the foregoing. Further, neither the vessel, her master or Owners, nor Charterers shall, unless otherwise in this charter expressly provided, be liable for any loss or damage or delay or failure in performance hereunder arising or resulting from act of God, act of war, seizure under legal process, quarantine restrictions, strikes, lock-outs, riots, restraints of labour, civil commotions or arrest or restraint of princes, rulers or people.

(b) The vessel shall have liberty to sail with or without pilots, to tow or go to the assistance of vessels in distress and to deviate for the purpose of saving life or property.

(c) Clause 27(a) shall not apply to or affect any liability of Owners or the vessel or any other relevant person in respect of

(i) loss or damage caused to any berth, jetty, dock, dolphin, buoy, mooring line, pipe or crane or other works or equipment whatsoever at or near any place to which the vessel may proceed under this charter, whether or not such works or equipment belong to Charterers, or

(ii) any claim (whether brought by Charterers or any other person) arising out of any loss of or damage to or in connection with cargo. [illegible]

[illegible]

28. [illegible]

29. [illegible]

30. [illegible]

31. Charterers shall have the option, after consultation with Owners, of requiring Owners to lay up the vessel at a safe place nominated by Charterers, in which case the hire provided for under this charter shall be adjusted to reflect any net increases in expenditure reasonably incurred or any net saving which should reasonably be made by Owners as a result of such lay-up. Charterers may exercise the said option any number of times during the charter period.

Requisition

32. Should the vessel be requisitioned by any government, de facto or de jure, during the period of this charter, the vessel shall be off-hire during the period of such requisition, and any hire paid by such government in respect of such requisition period shall be for Owners' account. Any such requisition period shall count as part of the charter period.

Outbreak of War

33. If war or hostilities break out between any two or more of the following countries: U.S.A., U.S.S.R., P.R.C., U.K., Netherlands both Owners and Charterers shall have the right to cancel this charter.

Additional War Expenses

34. If the vessel is ordered to trade in areas where there is war (de facto or de jure) or threat of war, Charterers shall reimburse Owners for any additional insurance premia, crew bonuses and other expenses which are reasonably incurred by Owners as a consequence of such orders, provided that Charterers are given notice of such expenses as soon as practicable and in any event before such expenses are incurred, and provided further that Owners obtain from their insurers a waiver of any subrogated rights against Charterers in respect of any claims by Owners under their war risk insurance arising out of compliance with such orders.

**War Risks**

35. (a) The master shall not be required or bound to sign bills of lading for any place which in his or Owners' reasonable opinion is dangerous or impossible for the vessel to enter or reach owing to any blockade, war, hostilities, warlike operations, civil war, civil commotions or revolutions.

(b) If in the reasonable opinion of the master or Owners it becomes, for any of the reasons set out in Clause 35(a) or by the operation of international law, dangerous, impossible or prohibited for the vessel to reach or enter, or to load or discharge cargo at, any place to which the vessel has been ordered pursuant to this charter (a "place of peril"), then Charterers or their agents shall be immediately notified by telex or radio messages, and Charterers shall thereupon have the right to order the cargo, or such part of it as may be affected, to be loaded or discharged, as the case may be, at any other place within the trading limits of this charter (provided such other place is not itself a place of peril). If any place of discharge is or becomes a place of peril, and no orders have been received from Charterers or their agents within 48 hours after dispatch of such messages, then Owners shall be at liberty to discharge the cargo or such part of it as may be affected at any place which they or the master may in their or his discretion select within the trading limits of this charter and such discharge shall be deemed to be due fulfilment of Owners' obligations under this charter so far as cargo so discharged is concerned.

(c) The vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any other wise whatsoever given by the government of the state under whose flag the vessel sails or any other government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or local authority including any de facto government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or local authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations anything is done or is not done, such shall not be deemed a deviation.

If by reason of or in compliance with any such direction or recommendation the vessel does not proceed to any place of discharge to which she has been ordered pursuant to this charter, the vessel may proceed to any place which the master or Owners in his or their discretion select and there discharge the cargo or such part of it as may be affected. Such discharge shall be deemed to be due fulfilment of Owners' obligations under this charter so far as cargo so discharged is concerned.

Charterers shall procure that all bills of lading issued under this charter shall contain the Chamber of Shipping War Risks Clause 1952.

**Both-to-Blame Collision Clause**

36. If the liability for any collision in which the vessel is involved while performing this charter falls to be determined in accordance with the laws of the United States of America, the following provision shall apply:

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the cargo carried hereunder will indemnify the carrier against all loss, or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of the said cargo, paid or payable by the other or non-carrying ship or her owners to the owners of the said cargo and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier."

"The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact."

Charterers shall procure that all bills of lading issued under this charter shall contain a provision in the foregoing terms to be applicable where the liability for any collision in which the vessel is involved falls to be determined in accordance with the laws of the United States of America.

**[illegible]**

37. General average contributions shall be payable according to the York/Antwerp Rules, 1974 *[illegible]* [illegible] in accordance with English law and practice but should adjustment be made in accordance with the law and practice of the United States of America, the following provision shall apply:

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the cargo, shippers, consignees or owners of the cargo shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo."

"If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the cargo to the carrier before delivery."

Charterers shall procure that all bills of lading issued under this charter shall contain a provision in the foregoing terms, to be applicable where adjustment of general average is made in accordance with the laws and practice of the United States of America.

**Clause Paramount**

38. Charterers shall procure that all bills of lading issued pursuant to this charter shall contain the following clause:

"(1) Subject to sub-clause (2) hereof, this bill of lading shall be governed by, and have effect subject to, the rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 (hereafter the "Hague Rules") as amended by the Protocol signed at Brussels on 23rd February 1968 (hereafter the "Hague-Visby Rules"). Nothing contained herein shall be deemed to be either a surrender by the carrier of any of his rights or immunities or any increase of any of his responsibilities or liabilities under the Hague-Visby Rules."

"(2) If there is governing legislation which applies the Hague Rules compulsorily to this bill of lading, to the exclusion of the Hague-Visby Rules, then this bill of lading shall have effect subject to the Hague Rules. Nothing herein contained shall be deemed to be either a surrender by the carrier of any of his rights or immunities

or an increase of any of his responsibilities or liabilities under the Hague Rules."

"(3) If any term of this bill of lading is repugnant to the Hague-Visby Rules, or Hague Rules if applicable, such term shall be void to that extent but no further."

"(4) Nothing in this bill of lading shall be construed as in any way restricting, excluding or waiving the right of any relevant party or person to limit his liability under any available legislation and/or law."

TOVALOP

39. Owners warrant that the vessel is:

***Owners and vessel to be member of ITOPF (International Tanker Owners Pollution Federation) at time of delivery and remains so throughout the T/C period.***

(i) ~~a tanker in TOVALOP and~~

(ii) properly entered in ***Owners and Charterers*** P. & I Club

and will so remain during the currency of this charter. ***See Rider Clause 9.2.***

When an escape or discharge of Oil occurs from the vessel and causes or threatens to cause Pollution Damage, or when there is the threat of an escape or discharge of Oil (i.e. a grave and imminent danger of the escape or discharge of Oil which, if it occurred, would create a serious danger of Pollution Damage, whether or not an escape or discharge in fact subsequently occurs), then Charterers may, at their option, upon notice to Owners or master, undertake such measures as are reasonably necessary to prevent or minimise such Pollution Damage or to remove the Threat, unless Owners promptly undertake the same. Charterers shall keep Owners advised of the nature and result of any such measures taken by them and, if time permits, the nature of the measures intended to be taken by them. Any of the aforementioned measures taken by Charterers shall be deemed taken on Owners' authority as Owners' agent, and shall be at Owners' expense except to the extent that:

(1) any such escape or discharge or Threat was caused or contributed to by Charterers, or

(2) by reason of the exceptions set out in Article III, paragraph 2, of the 1969 International Convention on Civil Liability for Oil Pollution Damage, Owners are or, had the said Convention applied to such escape or discharge or to the Threat, would have been exempt from liability for the same, or

[illegible]

This foregoing provision shall apply mutatis mutandis to this charter, the references to a bill of lading being deemed to be references to this charter.

Law and Litigation

41. (a) This charter shall be construed and the relations between the parties determined in accordance with the laws of England.

(b) Any dispute arising under this charter shall be decided by the English Courts to whose jurisdiction the parties hereby agree.

(c) Notwithstanding the foregoing, but without prejudice to any party's right to arrest or maintain the arrest of any maritime property, either party may, by giving written notice of election to the other party, elect to have any such dispute referred to the arbitration of a single arbitrator in London in accordance with the provisions of the Arbitration Act 1950, or any statutory modification or re-enactment thereof for the time being in force.

(i) A party shall lose its right to make such an election only if:

(a) it receives from the other party a written notice of dispute which -

(1) states expressly that a dispute has arisen out of this charter;

(2) specifies the nature of the dispute; and

(3) refers expressly to this clause 41(c)

and

(b) it fails to give notice of election to have the dispute referred to arbitration not later than 30 days from the date of receipt of such notice of dispute.

(ii) The parties hereby agree that either party may -

(a) appeal to the High Court on any question of law arising out of an award;

(b) apply to the High Court for an order that the arbitrator state the reasons for his award;

(c) give notice to the arbitrator that a reasoned award is required; and

(d) apply to the High Court to determine any question of law arising in the course of the reference.

(iii) It shall be a condition precedent to the right of any party to a stay of any legal proceedings in which maritime property has been, or may be, arrested in connection with a dispute under this charter, that that party furnishes to the other party security to which that other party would have been entitled in such legal proceedings in the absence of a stay. *Any dispute arising out of or in connection with this charter involving amounts upto and including US Dollars 100,000 (hundred thousand) excluding costs and interest shall be referred to arbitration by a single arbitrator in London in accordance with the provisions of the London Maritime Arbitrators Association (LMAA) small claims procedure.*

Construction

42. The side headings have been included in this charter for convenience of reference and shall in no way affect the construction hereof.

*43. Trading Limits*

*The vessel is to carry out world wide trading always afloat, always within I.W.L. and always via safe ports, excluding all war risk and warlike zones as declared by Owners' Hull & Machinery [illegible] United Nations and/or United States of America [illegible] the last [illegible] of the time charter period [illegible] Charterers [illegible] North Korea and [illegible] to be excluded.*

*44. Commission*

*[illegible] commission to [illegible] Owners [illegible]*

[illegible]



# EXHIBIT 3



BRYGGEN
SHIPPING &
TRADING A/S

**Address:**
Gullskogaarden, Bryggen 47
5003 Bergen, Norway

SH Marine
C/O I.S. Shipbrokers Ptd. Ltd.

**Date 21.01.2008**
**Invoice # 7327**

**Hire**

| M/T "KVARVEN" C/P 03.01.2006 - SH MARINE | AMOUNT | |
|---|---|---|
| 21st hire: | | |
| 01.02.2008 00:01 hrs - 29.02.2008 24:00 hrs<br>29 days at USD 16.250,- pdpr | USD | 471 250,00 |
| Communication/Victualling/Entertainment per month | USD | 2 000,00 |
| **TOTAL** | USD | 473 250,00 |

**Kindly remit to:**
**DnB NOR Bank ASA**
**USD account: 8210.05.33215**
**IBAN NO85 82100533215**
***Swift: DNBANOKK***
**Credit: Bryggen Shipping & Trading A/S**
**Gullskogaarden, Bryggen 47**
**N-5003 Bergen, Norway**
**V.A.T. No.: 842340772**

**Corresponding bank:**
**Bank of New York, 48 Wall Street, New York NY 10286**
**Swift: IRVTUS3N**
**ABA 021-000-018**



SH Marine
C/O I.S. Shipbrokers Pte. Ltd

BRYGGEN
SHIPPING & TRADING A/S
Address:
Gullskogaarden, Bryggen 47
5003 Bergen, Norway

**Date 21.01.2008**
**Invoice # 7328**

**Hire**

| M/T "SKARVEN" C/P 03.01.2006 - SH MARINE | | AMOUNT |
|---|---|---|
| 13th hire: | | |
| 06.01.2008 12:00 - 31.01.2008 23:59<br>25,4993 days at USD 16.250,- pdpr | USD | 414 363,63 |
| 25,4993 / 30 days at USD 2.000,- C/V/E | USD | 1 699,95 |
| 01.02.2008 00:01 - 29.02.2008 23:59<br>29 days at USD 16.250,- pdpr | USD | 471 250,00 |
| C/V/E at USD 2.000,- pr month | USD | 2 000,00 |
| Less outlays on Owner's behalf as per breakdown | USD | -2 194,83 |
| Less 58,76 mts FO spent during dd at USD 383,- pmt | USD | -22 505,08 |
| Less 81,90 mts DO spent during dd at USD 629,- pmt | USD | -51 515,10 |
| **TOTAL** | USD | 813 098,57 |

**Kindly remit to:**
**DnB NOR Bank ASA**
**USD account: 8210.05.33215**
**IBAN NO85 82100533215**
**Swift: DNBANOKK**
**Credit: Bryggen Shipping & Trading A/S**
**Gullskogaarden, Bryggen 47**
**N-5003 Bergen, Norway**
**V.A.T. No.: 842340772**

**Corresponding bank:**
**Bank of New York, 48 Wall Street, New York NY 10286**
**Swift: IRVTUS3N**
**ABA 021-000-018**